```
 1                 IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF NEBRASKA
 2

 3   UNITED STATES OF AMERICA,    )    No. 8:21CR131
                                  )
 4            Plaintiff,          )
                                  )
 5   vs.                          )
                                  )
 6   MILEA IXTA,                  )
                                  )    Omaha, Nebraska
 7            Defendant.          )    May 26, 2022

 8

 9

10              TRANSCRIPT OF PLEA PROCEEDINGS
            BEFORE THE HONORABLE SUSAN M. BAZIS
11             UNITED STATES MAGISTRATE JUDGE

12

13                    A-P-P-E-A-R-A-N-C-E-S

14   FOR THE PLAINTIFF:        Ms. Mikala Purdy-Steenholdt
                               Assistant United States Attorney
15                             1620 Dodge Street
                               Suite 1400
16                             Omaha, NE 68102-1506

17

     FOR THE DEFENDANT:        Mr. William F. Eustice
18                             Eustice Law Office
                               209 South 19th Street
19                             Suite 525
                               Omaha, NE 68102
20

21   TRANSCRIBER:              Ms. Rogene S. Schroder, RDR, CRR
                               111 South 18th Plaza
22                             Suite 3129
                               Omaha, NE 68102
23                             (402) 661-7383

24

     Proceedings recorded by electronic sound recording, transcript
25   produced with computer.
```

1     (At 11:41 a.m. on May 26, 2022; with counsel and the

2  defendant present:)

3          THE COURT:  All right.  We're on the record in

4  8:21CR131, United States of America versus Milea Ixta.

5     Will the attorney for the government please enter their

6  appearance for the record.

7          MS. PURDY-STEENHOLDT:  Mikala Purdy-Steenholdt on

8  behalf of the government.  Good morning, Your Honor.

9          THE COURT:  And for the defendant.

10          MR. EUSTICE:  Bill Eustice appearing with the

11  defendant this morning.

12          THE COURT:  All right.  It's my understanding that

13  you're here to plead guilty to Count I of the Indictment, which

14  is the only count in the Indictment.  Is that correct?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  All right.  Will you please raise your

17  right hand to be sworn by the courtroom deputy.

18     (Defendant sworn.)

19          THE COURT:  Now, I am going to be asking you certain

20  questions regarding your proposed change of your present plea

21  of not guilty.  Also I may ask you about certain facts

22  regarding the offense and charge to which you expect to plead

23  guilty.

24     You have just taken an oath to tell the truth.

25     Do you understand that you're now under an oath in this

1    hearing?

2         THE DEFENDANT:  Yes, Your Honor.

3         THE COURT:  And since you are under oath, your

4    answers to questions must be truthful; therefore, do you

5    understand that your answers may be used as evidence against

6    you if there is later a charge that you have committed perjury

7    or made a false statement in or concerning this hearing?

8         THE DEFENDANT:  Yes, Your Honor.

9         THE COURT:  Now, before we proceed any further, I

10   must determine whether you will consent to proceed before me as

11   a magistrate judge.  You do have the right to a change of plea

12   hearing before Judge Buescher, who is a district judge and the

13   judge that will sentence you.

14       Do you understand that right?

15        THE DEFENDANT:  Yes, Your Honor.

16        THE COURT:  And in the alternative, you may consent

17   to proceed before me as a magistrate judge.  If you consent to

18   proceed before me, then at the end of this hearing, I will

19   enter written findings and facts as to what happened in this

20   hearing and in which I will recommend to Judge Buescher that he

21   either accept your plea of guilty or that he not accept your

22   plea of guilty.

23       Do you understand that?

24        THE DEFENDANT:  Yes, Your Honor.

25        THE COURT:  Do you consent to proceed before me as a

1    magistrate judge at this hearing?

2          THE DEFENDANT:  I do consent.

3          THE COURT:  All right.  Now, there are two purposes

4    or reasons for this hearing.  First, all of us must make sure

5    that you understand the consequences of -- consequences of a

6    guilty plea, that is, what may happen as a result of you

7    pleading guilty to any charge against you.

8       Second, whatever action you take, such as pleading guilty,

9    must be voluntary; that is, an action done freely and without

10    any threat or force that you enter a plea.

11       So if at any time there's anything concerning this hearing

12    which you do not understand, including any words used or

13    questions asked, you are free to consult with your lawyer and

14    ask for an explanation or clarification so that you can and

15    will fully understand these proceedings and what may happen as

16    a result of this hearing, okay?

17          THE DEFENDANT:  Okay.

18          THE COURT:  What is your full name?

19          THE DEFENDANT:  Milea Lynn Ixta.

20          THE COURT:  And are you the same Milea Ixta who is

21    named as the defendant in the Indictment in this case?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  How old are you?

24          THE DEFENDANT:  Thirty-one.

25          THE COURT:  How far did you get in school?

1          THE DEFENDANT:  Ninth grade and GED.

2          THE COURT:  And where did you get your GED from?

3          THE DEFENDANT:  I have one test left, but I finished

4    most -- most of it in York.

5          THE COURT:  All right.  Have you ever been under a

6    doctor's care for any mental illness?

7          THE DEFENDANT:  Depression in the past.

8          THE COURT:  And were you prescribed medication for

9    that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Are you still taking that medication or

12    has that improved?

13          THE DEFENDANT:  That's improved.

14          THE COURT:  Okay.  Have you ever been under a

15    doctor's care for any type of chemical dependency or abuse such

16    as alcoholism or addiction to any controlled substances,

17    including narcotics or drugs?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Okay.  And I know you went to Valley Hope

20    in 2021 --

21          THE DEFENDANT:  Yeah.

22          THE COURT:  -- last year; is that right?

23          THE DEFENDANT:  Yes, that's correct.

24          THE COURT:  Have you gone to any other chemical

25    dependency program or been under a doctor's care other than the

1   time at Valley Hope?

2           THE DEFENDANT:  I am under a doctor's care at Midwest

3   Pain Clinic for my Suboxone.  I go to meetings.  I try to go

4   once a week, but if not, I have an app on my phone that I do

5   online, and then I'm on the waiting list for Blue Valley where

6   I'm at.  I also meet with my advocate once a week who handles,

7   I guess, just therapy and slash alcohol addiction.

8           THE COURT:  All right.  So when you went to Valley

9   Hope, what was that for?  What substances?

10          THE DEFENDANT:  I -- at the time I checked in, I was

11  actually sober; but I wanted -- I had never been to treatment

12  so I wanted to get help, but it would have been meth and

13  heroin.

14          THE COURT:  Okay.  And the Suboxone, is that -- is

15  that for -- what is that for?

16          THE DEFENDANT:  It's for heroin.  It's a medication.

17  It's just a treatment.

18          THE COURT:  And that's what I thought, but I wanted

19  to verify, but I will -- I'm -- I'll come back to that later.

20      For the purposes of today -- I mean, right now for the

21  plea, that's a different issue what I'm thinking.

22      All right.  So other than the Suboxone, are you -- well,

23  I'll come back to that in a minute.

24      So -- and then the therapy, it's -- or the treatment that

25  you're going through, that's a continuation on I'm assuming

1    discharge from Valley Hope to continue sobriety; is that right?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Okay.  During the last three days, have

4    you consumed any alcoholic beverages of any kind?

5              THE DEFENDANT:  No, Your Honor.

6              THE COURT:  Any narcotic or drugs that are not

7    legally prescribed for you?

8              THE DEFENDANT:  No, Your Honor.

9              THE COURT:  Any medication?  And I know you're taking

10   the Suboxone.  Any other medication?

11             THE DEFENDANT:  I take cetirizine for allergies.

12             THE COURT:  Okay.  Anything else?

13             THE DEFENDANT:  Occasionally naproxen or ibuprofen --

14             THE COURT:  Okay.

15             THE DEFENDANT:  -- but nothing else.

16             THE COURT:  All right.  So the Suboxone that you are

17   on or the medication that you're taking, is it in any way

18   affecting your mind, your ability to think and make decisions,

19   or your ability to think clearly during this hearing?

20             THE DEFENDANT:  No, Your Honor.

21             THE COURT:  All right.  Now, has a doctor prescribed

22   medications that you're supposed to be taking but you're not?

23             THE DEFENDANT:  No, Your Honor.

24             THE COURT:  Okay.  And is there any other substance

25   that I have not mentioned today or that we have not talked

1    about that is presently affecting in any way your mind, your

2    ability to think and make decisions, or your ability to think

3    clearly during this hearing?

4              THE DEFENDANT:  No, Your Honor.

5              THE COURT:  All right.  Now, Count I of the

6    Indictment charges you with possession with intent to

7    distribute 50 grams or more of methamphetamine, actual, in

8    violation of 21, United States Code, 841(a)(1) and Title 21,

9    United States Code, 841(b)(1).

10        Now, there are certain elements or things that the

11   government would have to prove beyond -- beyond a reasonable

12   doubt in order to convict you of the crimes charged.

13        So the elements the government would have to prove beyond

14   a reasonable doubt if you -- if you went to trial on this

15   charge are as follows:  That on or about January 18th, 2021, in

16   the District of Nebraska, that you possessed methamphetamine;

17   that you knew you were in possession of methamphetamine; that

18   you intended to distribute some or all of the methamphetamine

19   to another person; and the amount that you possessed with

20   intent to distribute was at least 50 grams or more of actual

21   methamphetamine.

22        Do you agree that those -- do you understand that those

23   are the elements that the government would have to prove beyond

24   a reasonable doubt if you went to trial on the ma- --

25             THE DEFENDANT:  Yes, Your Honor.

```
 1              THE COURT:  -- on this charge?

 2              THE DEFENDANT:  Yes, Your Honor.

 3              THE COURT:  All right.  Now, I've mentioned the

 4    statutes which are the basis of -- basis -- basises [sic] for

 5    the charges against you.

 6         Now, the statute -- those statutes provide certain

 7    penalties or punishments that can be imposed upon a person who

 8    is convicted of the offense charged against you.

 9         The penalties that you are facing are as follows:

10         Mandatory minimum of ten years, a maximum of life in

11    prison; a $10 million fine; both such fine and imprisonment; a

12    hundred dollar special assessment; a mandatory minimum of five

13    years, up to a maximum lifetime term of supervised release; and

14    possible ineligibility for certain federal benefits.

15         Do you understand that those are the penalties that you

16    are facing?

17              THE DEFENDANT:  Yes, Your Honor.

18              THE COURT:  And apart from the statutory penalties

19    that I have mentioned regarding the offense charged against

20    you, there are also sentencing guidelines which may apply to a

21    sentence in your case.

22         Have you and your attorney talked generally about the

23    sentencing guidelines that may apply to your case?

24              THE DEFENDANT:  Yes, Your Honor.

25              THE COURT:  And those sentencing guidelines are no
```

1    longer mandatory but advisory.  In other words, the judge must

2    consult those guidelines before he determines your sentence in

3    this case.

4         Do you understand that?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  And do you understand that the Court will

7    not be able to determine whether and what guidelines may apply

8    regarding a sentence until a presentence investigation report

9    has been completed by the probation officer and until you and

10   your lawyer and the government have had an opportunity to

11   examine the report and challenge facts stated in the

12   presentence investigation report?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  And do you understand that the sentence

15   eventually imposed on you may be different from any sentence

16   which you and your attorney -- attorney believe may be imposed

17   upon you?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  And in your plea agreement, you waive or

20   give up your right to appeal the -- your conviction and

21   sentence in this case.  Ordinarily, you do have the right to

22   appeal.

23        Do you understand you're giving up that right?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  And you are also waiving and give --

1   giving up the right to file any post-conviction proceedings

2   except in certain circumstances as set forth in your plea

3   agreement.

4       Do you understand that?

5           THE DEFENDANT:  Yes, Your Honor.

6           THE COURT:  Now, some state penal systems allow

7   parole, which is release from prison before a person has served

8   all of the sentence imposed; however, you are in a court of the

9   United States, a federal court, and in the federal system

10  parole has been abolished.

11      Do you understand that concerning any sentence to

12  imprisonment under federal law, parole does not exist; and,

13  therefore, if you are sentenced to imprisonment, you'll not be

14  released on parole?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  And if you're convicted as a result of

17  your plea of guilty, then in addition to any sentence of

18  imprisonment, the laws of the United States also require that

19  the Court shall, as part of the sentence imposed, include a

20  term of supervised release which must be completed after you --

21  after you've served your sentence of imprisonment.

22      Therefore, a term of supervised release is imposed in

23  addition to, not instead of or in place of, a sentence of

24  imprisonment.

25      Supervised release involves a period when a probation

1    officer will monitor or check up on your activity after you've

2    been released from prison.

3         Do you understand generally what is meant by supervised

4    release?

5              THE DEFENDANT:  Yes, Your Honor, I do.

6              THE COURT:  And if your supervised release is later

7    revoked because you have violated a condition of the supervised

8    release, you will be returned to prison and required to serve

9    in prison all or a part of the term of supervised release

10   without credit for the time that you've been on supervised

11   release.

12        Do you understand that?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  Do you have any questions about

15   supervised release as part of any sentence imposed on you?

16             THE DEFENDANT:  No, Your Honor.

17             THE COURT:  All right.  And do you understand that if

18   your sentence -- your sentence imposed on you is greater or

19   more severe than you expect, you're still bound by your plea

20   agreement and you'll have no right to withdraw your guilty

21   plea?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  And in your plea agreement, you waive and

24   give up your right to withdraw your plea of guilty pursuant to

25   Rule 11(d) of the Federal Rules of Criminal Procedure.  And

1   what that means is at the conclusion of this hearing if I

2   recommended -- recommend to Judge Buescher that he accept your

3   plea of guilty, then you no longer have the automatic right to

4   withdraw your plea of guilty before Judge Buescher accepts your

5   plea.

6       Do you understand that?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  And do you understand that if the Court

9   accepts your plea of guilty, you'll be found guilty of a

10  felony; and a felony conviction may deprive you of available

11  civil rights such as the right to vote, to hold public office,

12  to serve on a jury, and to possess any kind of firearm?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  And a felony conviction may also work to

15  your disadvantage later in your life, including an enhancement

16  of a sentence for a conviction after your conviction in this

17  case.

18      Enhancement means that the punishment imposed on you for a

19  later conviction of another crime may be greater as a result of

20  your conviction in this case.

21      Do you understand that?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  All right.  Miss Purdy-Steenholdt, can

24  you please set forth the plea agreement in this case.

25          MS. PURDY-STEENHOLDT:  Yes, Your Honor.

1      The parties have reached a plea agreement that Defendant

2  will plead guilty to Count I of the Indictment, possession with

3  intent to distribute methamphetamine, in violation of 21 U.S.C.

4  Section 841(b)(1)(A).

5      This agreement is limited to the United States Attorney's

6  Office for the District of Nebraska and cannot bind any other

7  federal, state, or local prosecuting, administrative, or

8  regulatory authorities.

9      In this agreement, the parties have agreed that Defendant

10  should be held responsible beyond a reasonable doubt for at

11  least 148.77 grams of actual methamphetamine.

12      The parties agree that Defendant may request additional

13  downward adjustments at sentencing; however, the government is

14  free to oppose such motions.

15      The parties have agreed that -- oh, the parties have

16  reached no agreement regarding Defendant's criminal history.

17      And as the Court already pointed out, the parties have

18  agreed that Defendant does waive the right to appeal and

19  collaterally attack the sentence except under very narrow

20  circumstances as dictated on page 5 of the plea agreement.

21          THE COURT:  All right.  Thank you.

22      Mr. Eustice, is that your understanding of the plea

23  agreement?

24          MR. EUSTICE:  Yes, Your Honor.

25          THE COURT:  Miss Ixta, is that your understanding of

1   the plea agreement?

2           THE DEFENDANT:  Yes, Your Honor.

3           THE COURT:  Now, it's perfectly proper for you and

4   the government to enter into a plea agreement; however, Judge

5   Buescher is not bound by the plea agreement; and if Judge

6   Buescher disagrees with you and the government, you are still

7   bound by the agreement and will have no right to withdraw your

8   plea of guilty.

9       Do you understand that?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  All right.  Mr. Eustice, can you please

12  explain how you and the defendant went about completing the

13  Petition to Enter a Plea of Guilty and the plea agreement in

14  this case.

15          MR. EUSTICE:  It was face-to-face up in my office and

16  we went through each question.

17          THE COURT:  All right.  And then in the petition, is

18  that your handwriting or her handwriting?

19          MR. EUSTICE:  Mine.

20          THE COURT:  All right.  Miss Ixta, is that how it

21  happened?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  And on page 8 of the Petition to Enter a

24  Plea of Guilty, it appears to have your signature.

25      Is that your signature which you signed today, I think?

1          THE DEFENDANT:  Yes, it is.

2          THE COURT:  Or, no, that was the one that was already

3     done.

4          THE DEFENDANT:  It is my signature, Your Honor.

5          THE COURT:  Yep.  And those all got dated.

6     [Indiscernible].

7      Okay.  And even though those answers in the petition are

8     in the handwriting of your attorney, are those your answers to

9     those questions?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  And are they true and correct?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  And if you had any questions about the

14     petition, did you ask your attorney and did your attorney

15     answer your questions to your satisfaction?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Do you now have any questions concerning

18     anything contained in your Petition to Enter a Plea of Guilty?

19          THE DEFENDANT:  No, Your Honor.

20          THE COURT:  All right.  Moving to the plea agreement,

21     that does appear to have your signature on the last page.

22      Is that your signature on the plea agreement?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  And did you read the plea agreement

25     before you signed it?

 1          THE DEFENDANT:  I did, Your Honor.

 2          THE COURT:  Did you understand it?

 3          THE DEFENDANT:  I did, Your Honor.

 4          THE COURT:  And if you had any questions about it,

 5     did you ask your attorney and did your attorney answer your

 6     questions to your satisfaction?

 7          THE DEFENDANT:  Yes, Your Honor.

 8          THE COURT:  And under the terms of the plea

 9     agreement, you are agreeing that you should be held responsible

10     beyond a reasonable doubt for at least 148.77 grams of actual

11     methamphetamine; is that correct?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  Do you agree to that?

14          THE DEFENDANT:  I do.

15          THE COURT:  Are you responsible for that amount?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  All right.  Do you have any other

18     agreements with the government other than what is set forth in

19     the written plea agreement?

20          THE DEFENDANT:  No, Your Honor.

21          THE COURT:  Now, you have been represented by William

22     Eustice in this matter.  Are you satisfied with his

23     representation of you as your attorney?

24          THE DEFENDANT:  I am, Your Honor.

25          THE COURT:  Do you have any complaints or objections

1    concerning the manner in which Mr. Eustice has represented you

2    in this matter?

3              THE DEFENDANT:  No, Your Honor.

4              THE COURT:  All right.  You do have certain

5    constitutional rights as a criminal defendant and I'm going to

6    go over those now with you.

7         You have the right to plead not guilty to any offense

8    charged against you and to continue in your pleas of not

9    guilty.

10        You have the right to a speedy and public trial.

11        You have the right to be tried by a jury and the right to

12   have a jury determine whether the government has proved beyond

13   a reasonable doubt each and every element of the charged

14   offense, including the element of the amount of controlled

15   substances attributable to you which is a factor bearing on

16   your sentence.

17        You do have the right to an attorney at trial and all

18   stages of the proceedings, and if you could not afford an

19   attorney, we would appoint one to represent you free of charge.

20        At your trial you do have the right to testify in your own

21   defense if you want to.  You also have the right to remain

22   silent, which means you can decline to testify in your trial,

23   and if you choose not to testify, this cannot be used against

24   you.

25        You have the right to see and hear all witnesses and

1    cross-examine persons who are witnesses against you.

2         You have the right to present witnesses on your behalf and

3    if witnesses do not want to appear, you have the right to

4    subpoena witnesses which would require persons to appear and be

5    witnesses at your trial.

6         You also have the right to require the production of

7    evidence that is relevant to the charge against you.

8         Concerning each of the rights just mentioned by me and the

9    rights set out in the petition which you have signed, do you

10   understand that under the Constitution of the United States,

11   you do have and can use each and all of those rights?

12            THE DEFENDANT:  Yes, Your Honor.

13            THE COURT:  Do you further understand that if your

14   plea of guilty's accepted by the Court, there will not be a

15   trial of any kind on the charge against you because by you

16   pleading guilty, you waive or give up the right to a trial and

17   to those constitutional rights except for your right to

18   counsel?

19            THE DEFENDANT:  Yes, Your Honor.

20            THE COURT:  And do you also understand that if your

21   plea of guilty's accepted, you waive or give up the

22   constitutional right to challenge, contest, or object to

23   evidence, including the right to question the lawfulness of any

24   confession or statement made by you, and the right to challenge

25   any evidence which the government has obtained in this case

1    against you?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Do you have any questions or want any

4    further explanation about any of the rights which have been

5    mentioned at this hearing or which are stated in your Petition

6    to Enter a Plea of Guilty?

7              THE DEFENDANT:  No, Your Honor.

8              THE COURT:  Do you fully understand each of the

9    constitutional rights which -- which you have concerning a

10   trial on the charges in -- in regards to the Indictment that's

11   filed against you in this case?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  In order to get you to waive or give up

14   your constitutional rights, has anyone threatened you, directly

15   or indirectly, used any force against you, or promised you

16   anything outside your written plea agreement?

17             THE DEFENDANT:  No, Your Honor.

18             THE COURT:  Do you freely and voluntarily waive or

19   give up all of the constitutional rights which have been

20   mentioned or discussed today during this hearing and those

21   stated in your Petition to Enter a Plea of Guilty?

22             THE DEFENDANT:  I do, Your Honor.

23             THE COURT:  All right.  And, Mr. Eustice, have you

24   discussed with the defendant any defenses she might have to the

25   charges contained in the Indictment filed in this case?

1            MR. EUSTICE:  Yes, Your Honor.

2            THE COURT:  And, Miss Ixta, is that correct?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  All right.  After consideration of the

5    responses of the defendant in this case to all questions asked

6    thus far in this hearing, I now find that she fully understands

7    her rights, that she freely, voluntarily, knowingly, and

8    intelligently waives her rights, and that she fully understands

9    the consequences of waiving her rights.

10        In particular, I find that she is competent to plead and

11   understands the nature of the charges -- charge filed against

12   her in this case and further under -- understands the possible

13   penalties which may be imposed upon conviction of the offense

14   charged.

15        Also I find that the defendant understands the following

16   rights:

17        The right to plead not guilty and to persist in that plea

18   of not guilty, to be tried by a jury, to have the free

19   assistance of counsel at trial and all stages of the

20   proceedings, to confront and cross-examine witnesses against

21   her, and the right not to be compelled to testify against

22   herself.

23        Further, I find the defendant understands the fact that as

24   a consequence of a plea of guilty, there will be no trial of

25   any kind concerning the charge against her, that is, by her

1    pleading guilty, she waives or gives up the right to trial.

2        I also find that the defendant understands the answers to

3    my questions may be used against her if there is later a

4    prosecution for perjury or any false statement relative to this

5    hearing.

6        Miss Ixta, knowing and understanding everything stated in

7    your Petition to Enter a Plea of Guilty, knowing and

8    understanding everything in your written plea agreement, and

9    understanding everything discussed during this hearing, how do

10   you now plead to Count I of the Indictment filed in this case?

11            THE DEFENDANT:  Guilty, Your Honor.

12            THE COURT:  In order to get you to plead guilty to

13   Count I of the Indictment, has anyone threatened you, directly

14   or indirectly, used any force against you, or promised you

15   anything outside your written plea agreement with the

16   government?

17            THE DEFENDANT:  No, Your Honor.

18            THE COURT:  Are you freely and voluntarily pleading

19   guilty to Count I of the Indictment?

20            THE DEFENDANT:  Yes, Your Honor.

21            THE COURT:  All right.  I'm now going to ask the

22   government for a factual basis.  Please listen 'cause I will

23   ask you about it in just one moment.

24       Miss Purdy-Steenholdt.

25            MS. PURDY-STEENHOLDT:  On or about January 18th of

1    2021, officers responded to a Walmart in Omaha for a report of

2    shoplifting.  An off-duty officer and loss prevention officer

3    observed Defendant shoplift from Walmart by failing to pay for

4    clothing items.

5        Officers detained Defendant and conducted a search of

6    Defendant's personal bag.  In addition to finding stolen

7    merchandise, officers found a large Ziploc bag containing a

8    white crystalline substance consistent with methamphetamine.

9        Lab results confirmed Defendant possessed 148.87 grams of

10   actual methamphetamine.

11       Defendant also possessed a box of Ziploc baggies and 500

12   grams of MSM which is commonly used as a cutting agent for

13   methamphetamine.

14       Defendant intended to distribute the aforementioned

15   methamphetamine to others.

16            THE COURT:  And all events occurred in the District

17   of Nebraska?

18            MS. PURDY-STEENHOLDT:  Yes, Your Honor.

19            THE COURT:  All right.  Miss Ixta, did you hear what

20   the government's attorney said?

21            THE DEFENDANT:  Yes, Your Honor.

22            THE COURT:  Do you agree that the government could

23   prove those facts beyond a reasonable doubt if you went to

24   trial on the charges in the Indictment?

25            THE DEFENDANT:  I do, Your Honor.

1          THE COURT:  Did you do those things which the

2     government said you did?

3          THE DEFENDANT:  Yes, I did, Your Honor.

4          THE COURT:  And in question 41 on page 7 of the

5     Petition to Enter a Plea of Guilty, the question states:  What

6     acts did you do that cause you to think that you are guilty of

7     the charge to which you want to plead guilty; and your answer

8     was that you possessed methamphetamine in the amount of 50

9     grams or more with the intent to distribute it.

10       Is that correct?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  Miss Purdy-Steenholdt, as attorney for

13    the government, do you certify that it is your opinion that the

14    plea is knowingly, voluntarily, and intelligently made, and

15    that there is a factual basis for her plea?

16         MS. PURDY-STEENHOLDT:  Yes, Your Honor.

17         THE COURT:  Are there any questions I should pose to

18    the defendant concerning her plea of guilty?

19         MS. PURDY-STEENHOLDT:  No, Your Honor.

20         THE COURT:  Mr. Eustice, as counsel for the

21    defendant, do you certify that it is your opinion that the

22    plea's voluntarily, knowingly, and intelligently made, and that

23    there is a factual basis for the plea?

24         MR. EUSTICE:  Yes, Your Honor.

25         THE COURT:  Are there any questions I should pose to

1   the defendant concerning her plea of guilty at this time?

2            MR. EUSTICE:  No, ma'am.

3            THE COURT:  Miss Ixta, do you have any questions of

4   your attorney or myself concerning your plea of guilty at this

5   time?

6            THE DEFENDANT:  No, Your Honor.

7            THE COURT:  All right.  Then I'm going to make the

8   following finding and recommendation in writing to Judge

9   Buescher:

10       I'm going to find that your plea of guilty's entered

11  knowingly, intelligently, and voluntarily, and that there is a

12  factual basis for your plea.

13       I will recommend to Judge Buescher that he accept your

14  guilty plea and find you guilty.

15       I will further recommend that he accept the written plea

16  agreement in this case.

17       I will note that all the rules and laws involving

18  submissions of guilty pleas have been complied with, and that

19  the Petition to Enter a Plea of Guilty's on a form approved by

20  the court and will be filed in your case, and that it's signed

21  by you, your attorney, and the government's attorney.

22       I will also note that any plea agreement in this case is

23  in writing and signed by all parties and that there are no

24  agreements or stipulations outside the written plea agreement.

25       Now, I will issue an Order on Sentencing Schedule.  A

1    presence investigation report will be prepared and it will

2    be in writing.  You will have an opportunity to see it, to

3    object to any facts that you believe to be incorrect, and the

4    government will have that same opportunity.  So there's a lot

5    of dates in that Order on Sentencing Schedule to create that

6    written document which is the document Judge Buescher will

7    review prior to sentencing you.

8         Judge Buescher has set your sentencing date for

9    August 24th.  I just want to make sure nothing's changed --

10   August 24th, 2022, at 10 a.m., August 24th at 10 a.m.

11        Now, I have reviewed the docket sheet, and there was some

12   information provided, and I'm -- we're going to talk about

13   this.  You were actually previously detained in this case on

14   April 28th, 2021.  You were in state custody at that time is my

15   belief, but there was a detention order that was issued, and

16   there was a hold that was placed on you.

17        It's also my understanding that the state system released

18   you on -- back in September of last year, and what should have

19   happened -- and there was also a change in the government's

20   attorney, a change in your attorney, and I think the attorneys

21   only knew you as being out, and no one realized that you were

22   supposed to be detained.

23        So what should have happened, you should not have been

24   released by the State.  The marshal should have been notified,

25   brought you back up here, and we would have had a -- another --

1    you would have had the right to have another detention hearing.

2    Since it wasn't in abeyance, you wouldn't have automatically

3    had a hearing, but you should have come into marshal's custody.

4    You should have never been released.

5          You have been released since September.  That was part of

6    the reason I wanted a drug test today.  Because you are not on

7    parole so nobody's been supervising you.  I know that you've

8    been making your meetings and obviously you came to court

9    today.

10          Obviously, the Court's a little concerned 'cause you were

11    at that hearing where you were detained and that was in April.

12    I realize you were not released until September, but it would

13    be the Court's belief that you knew you should have been

14    detained so you should have said something to somebody when you

15    got out.

16                THE DEFENDANT:  I did.

17                THE COURT:  Who'd you talk to?

18                THE DEFENDANT:  I called my attorney and I --

19                MR. EUSTICE:  Yeah, I don't recall the circum- --

20                THE COURT:  No -- no offense, but I don't think he

21    remembers that, but -- so you did call your attorney and --

22                THE DEFENDANT:  I -- I have the text messages on my

23    phone 'cause I have his cell phone number.

24                THE COURT:  Okay.

25                THE DEFENDANT:  I texted him right away when I was

1    released, and I asked him, hey, I was released and I'm not sure

2    why.  What'd I need to do because I don't -- I don't want to be

3    in any trouble.  I don't want somebody to come arrest me in

4    front of my kids.  What should I do?  So I do have those

5    messages and I did contact him as -- right -- the same day as I

6    was released.

7              THE COURT:  Okay.  And then how did you end up going

8    to Valley Hope, then?

9              THE DEFENDANT:  Well, I have never been to treatment

10    before, and, you know, I finally have hit my rock bottom, and I

11    realized, like, I need treatment, I need other tools so that I

12    don't use drugs for -- for things, and I checked myself in.

13         I called Valley Hope and asked if they took my insurance

14    and got in there right away.

15              THE COURT:  Okay.  And so then my question becomes

16    the Suboxone that you're on -- because, obviously, you were in

17    custody.  So it would be my hope that -- through corrections --

18    but I know stuff happens.  That you were not using heroin in

19    jail.  And maybe you were.  I don't know.

20         But if you weren't and then you were out and went to

21    treatment, there would be no reason for the Suboxone unless

22    that was the release treatment plan as a way to make sure that

23    you don't use it 'cause obviously you can't use heroin while

24    you're on that.

25         So what was the plan or how did that come about?  And

1   whatever it is, just tell me.  If you're honest with me, we can

2   work through that.  And, obviously, you showed up here today.

3   So what I don't want you to feel like is you can't be honest

4   with me and I'm going to put you in custody 'cause that's not

5   quite where we are so...

6           THE DEFENDANT:  So I was actually placed on it.  Like

7   I said, I was sober when I went in there.  I wasn't using in

8   jail.  I was placed on it while I was in Valley Hope after

9   about, I don't know, two weeks of being in there.

10      We had lectures all the time, and we had somebody come and

11  speak on MAT, medication-assisted treatments, and I had

12  actually been placed on another one before the Suboxone which

13  was just for help with, like, cravings and heroin and stuff.

14      Only, like, 1 or 2 percent of people ever get actually

15  clean from heroin.

16          THE COURT:  I know.

17          THE DEFENDANT:  So using that to help me with

18  cravings and different things like that, I was placed on it,

19  and that was part of my released treatment plan.  And they

20  actually set up the appointment with Midwest Pain Clinic for me

21  and found them and sent me there, and I -- and I went there to

22  continue it.

23          THE COURT:  Okay.

24          THE DEFENDANT:  I'm on a very low dose.

25          THE COURT:  All right.  But you're consistently going

1    and that seems to be --

2             THE DEFENDANT:  Yes.

3             THE COURT:  -- working and everything?

4             THE DEFENDANT:  I -- I go -- at first it was once a

5    week, and I get drug-tested every time I go, but now I'm at

6    once a month I go, and they drug-test me just to make sure

7    there's nothing else in my system, otherwise obviously I can't

8    continue on the treatment.

9             THE COURT:  Right.  Okay.  And you're working?

10            THE DEFENDANT:  I have -- yeah, I've been working for

11   six and a half months now.

12            THE COURT:  Okay.

13            THE DEFENDANT:  And I do have some letters and stuff

14   from, like, my employer and everything.  They're looking at

15   making me OM, putting me in training for that.  I just -- I

16   didn't know I needed to bring it today so I didn't bring it.

17            THE COURT:  No.  That's okay.  Okay.  Yeah, we all

18   kind of learned about this this morning so -- okay.

19       'Cause, I mean, up till this morning, I thought you were

20   in custody, to be honest with you, so that's how I thought you

21   were going to be here, and so I think did the marshals till you

22   weren't anywhere to be found in custody so ...

23       Okay.  What's the government's position in regards to the

24   issue of detention today, if you have one?

25            MS. PURDY-STEENHOLDT:  Yes.  Your Honor, the

1    government is inclined to have Ms. Ixta on release conditions

2    but that'd be pending Pretrial's I guess typical approval

3    process in the sense of making sure her place is suitable to

4    live, that she's around the right people, all that, but then,

5    additionally, also pending successful drug test would be the --

6    the government's condition.

7            THE COURT:  And part of -- and I would say this:

8    Part of my order of release and continuing you on release is

9    that you would sign a release to Pretrial for the pain clinic

10   records, just what you're on, as well as the -- the drug test,

11   'cause if you've been testing clean this whole time, I'm not

12   really that concerned.

13           THE DEFENDANT:  Mm-hmm.

14           THE COURT:  And you're going to test -- I think that

15   Suboxone's -- you're going to test positive for -- I guess it

16   would be stimulants or whatever that is for heroin or -- I

17   mean, I think you're going to test --

18           THE DEFENDANT:  Opiates, I think.

19           THE COURT:  Yeah, opiates.  Thank you.

20       You'll probably test positive for that, but I don't know

21   if there's anything else.

22       So the drug test at this point because you're on that

23   might be more minimally informative than if you were not on

24   that, I guess.  So -- okay.

25       Mr. Eustice, anything you want to say?

1          MR. EUSTICE:  No.  Just that she's been very

2     attentive to her case.  I mean, she contacts me on a regular

3     basis and if we have an office appointment, she always shows up

4     so --

5          THE COURT:  All right.

6          MR. EUSTICE:  -- it hasn't been a problem.

7          THE COURT:  So -- all right, Mary, you ready?

8          COURTROOM DEPUTY:  Do you have a copy of that order?

9     Do you need me to mark it?

10         THE COURT:  Yeah, I'm just going to give you the

11    letters is what I'm going to do.

12         COURTROOM DEPUTY:  Yes.

13         THE COURT:  So A, D as in David, G, and just put

14    Nebraska if that's not...

15       H as in Henry.

16         COURTROOM DEPUTY:  Okay.

17         THE COURT:  L as in Larry.

18         COURTROOM DEPUTY:  Okay.

19         THE COURT:  M as in Mary.

20         COURTROOM DEPUTY:  Okay.

21         THE COURT:  N as in Nancy.

22         COURTROOM DEPUTY:  Okay.

23         THE COURT:  Q.  And you don't need to put in a date

24    for the evaluation 'cause that's --

25         COURTROOM DEPUTY:  Just delete that out of there or

```
1    it'll go away?
2            THE COURT:  It should go away --
3            COURTROOM DEPUTY:  Yeah.
4            THE COURT:  -- and just not put anything in there.
5        And then X and check as required by treatment regimen.
6        Do you have any family members that are convicted felons
7    that you're living with?
8            THE DEFENDANT:  Not that I'm living with, no.
9            THE COURT:  Okay.  That you have regular contact
10   with?
11           THE DEFENDANT:  No.  Well, my father.  He's in prison
12   but I don't --
13           THE COURT:  Okay.
14           THE DEFENDANT:  -- he calls me sometimes, but I don't
15   have any other contact with anyone.
16           THE COURT:  Okay.  That's all right.  So we don't --
17   do you have -- just do as treatment regimen and then Y.
18           COURTROOM DEPUTY:  And then Y.  What was the date of
19   that sentencing again, Judge?  Do you remember?
20           THE COURT:  The date of the detention order?
21           COURTROOM DEPUTY:  No.  The sentencing.
22           THE COURT:  Oh, oh, oh, sorry.
23           COURTROOM DEPUTY:  Was it August?
24           THE COURT:  August 24th at 10 a.m.
25           COURTROOM DEPUTY:  Okay.
```

1          THE COURT:  And then while she's finishing that up,

2    Pretrial will probably verify and that's why I was having them

3    ask questions as to where you were living, what was going on

4    'cause when you had your pretrial report, they could not get

5    ahold of your mom to verify any information, so the pretrial

6    report is what we call unverified.

7        So -- not that it -- and in addition to that, obviously,

8    you were in custody at the time as well, so obviously a lot of

9    things could have changed so that's what we were trying to

10   figure out.

11       Now, obviously, you've been doing very well, and quite

12   frankly -- and I'm not saying you're not being truthful, but

13   provided everything you've said is true, you're doing

14   remarkably well so congratulations on that, quite frankly.

15   You're doing really well.

16       'Cause you're right, your record is not -- yeah --

17   necessarily reflective of that and what was going on at the

18   time, but you've definitely turned that around.  So you should

19   be proud of yourself for that for sure --

20          THE DEFENDANT:  Thank you.

21          THE COURT:  -- which also is part of the reason why

22   I'm willing to let you continue to be on release pending

23   sentencing.

24          THE DEFENDANT:  Thank you, Your Honor.

25          THE COURT:  Oh, we also have to do F.  Sorry.  I knew

```
 1    I missed something.  Which is the passport one.
 2         Oh, and on alcohol, refrain from any use of alcohol.  I
 3    think I didn't tell you that.
 4              COURTROOM DEPUTY:  Any use?
 5              THE COURT:  Yep.
 6              COURTROOM DEPUTY:  Okay.
 7              THE COURT:  All right.  And then...
 8         There's another one I missed.  I can tell you that.
 9         I'm looking for the one for law enforcement contact.  It
10    should be right in front of my face.
11         Oh, U, U as in umbrella.
12         So we're going to go over the conditions of release.
13    They'll be on the screen there, but I'll go over them with you.
14         Any questions, concerns, you don't understand something,
15    you need to clar- -- need me to clarify something, just
16    interrupt me, okay?
17         You might make -- need to make that a little bit bigger
18    for me, Mary.
19              COURTROOM DEPUTY:  It's such a -- oh, well
20    [indiscernible].
21              THE COURT:  On I think the bottom right, that little
22    toggle switch.  You have to --
23              COURTROOM DEPUTY:  Right here?
24              THE COURT:  If you go in the middle and go to the
25    right just a little bit.  There we go.
```

1          Thank you.

2              COURTROOM DEPUTY:  Okay, great.

3              THE COURT:  All right.  You must not commit any

4    offense in violation of federal, state, or local law while on

5    release in this case.

6          You must cooperate in the collection of a DNA sample if

7    it's required by law.

8          You must immediately advise the Court, defense counsel,

9    and the U.S. Attorney in writing before any change in address

10   and telephone number; and you must appear at all proceedings as

11   required and must surrender for service of any sentence imposed

12   as directed; and, again, that has your sentencing date of

13   August 24th at 10 a.m.

14         And so we're just dealing with the boxes that are checked.

15   So you must truthfully report to the United States Probation

16   and Pretrial Service Office as directed and comply with their

17   directions.

18         You must maintain or actively seek employment.

19         You must not obtain a passport, and if you do have a

20   passport, you do need to surrender that to the pretrial service

21   office.

22         You must not leave Nebraska unless preapproved by the

23   supervising officer or the Court.

24         And you must avoid all contact, direct or indirectly, with

25   any persons who are or may become a victim or potential witness

1    in the subject investigation or prosecution of this case.

2         You cannot possess a firearm, destructive device, or other

3    dangerous weapon.

4         You must refrain from any use or possession of alcohol.

5         You cannot possess or use a narcotic drug or other

6    controlled substance unless prescribed by a licensed medical

7    practitioner so the Suboxone's fine.

8         You must obtain a substance abuse treatment evaluation

9    which you've already done.

10        And then, Mary, if you can check the two boxes in Q.

11        You've already done that.  The only reason I have this is

12   if something would come up and they need to use funds for you

13   to do some form of treatment or continue with your treatment,

14   that'll allow that to happen, okay?

15             THE DEFENDANT:  Okay.

16             THE COURT:  You must report as soon as possible to

17   the supervising officer any contact with law enforcement

18   personnel, including, but not limited to, any arrest,

19   questioning or traffic stop.  So if you get stopped by law

20   enforcement and don't receive a ticket, you still have to let

21   Pretrial know that, okay?

22             THE DEFENDANT:  Okay.

23             THE COURT:  You cannot be with, associate with, or

24   communicate with persons known or suspected to be or to have

25   been involved in drug use or trafficking, weapons possession,

1    or weapons trafficking without the prior approval of the

2    supervising officer or the Court or as required by your

3    treatment regimen.

4              THE DEFENDANT:  Okay.

5              THE COURT:  Will that work?  You're not having...

6              THE DEFENDANT:  I'm not having any of that.

7              THE COURT:  Okay.  And that's perfect.  Based on what

8    you're doing, that would be my hope; but that's why I was also

9    asking those questions previously.

10        And you must submit to a search of your person, place of

11   residence, or vehicle upon request of law enforcement or

12   Pretrial Services.

13        Do you have any questions about those conditions?

14             THE DEFENDANT:  No, Your Honor.  Thank you.

15             THE COURT:  All right.  The next section's the

16   penalties and sanctions section and I'm going to generally go

17   over this with you.  You will get a copy of this before you

18   leave here today so I do encourage you to read it in its

19   entirety.

20        A violation of any of the foregoing conditions of release

21   may result in the immediate issuance of a warrant for your

22   arrest or revocation of release, an order of detention, and a

23   prosecution for contempt of court, and could result in a term

24   of imprisonment, a fine, or both.

25        The commission of any crime while on pretrial release may

1    result in an additional sentence.  That additional sentence

2    would be in addition to any other sentence that you receive.

3          Federal law does make it a crime to intimidate or attempt

4    to intimidate a witness, victim, juror, informant, or officer

5    of the court, or to obstruct a criminal investigation.  It also

6    makes it a crime to tamper or -- tamper with a witness, victim,

7    or informant, or to retaliate -- retaliate against a witness,

8    victim, or informant, or threaten or attempt to do so.

9          If after release you knowingly fail to appear as required

10   or surrender for the service of a sentence, you may be

11   prosecuted for failing to appear or surrender and an additional

12   punishment may be imposed.  And, again, that additional

13   punishment would be in addition to any other sentence you

14   receive.

15         Do you generally understand the penalties and sanctions?

16              THE DEFENDANT:  Yes, Your Honor.

17              THE COURT:  Any questions about that?

18              THE DEFENDANT:  No, Your Honor.

19              THE COURT:  All right.  If you could please raise

20   your right hand and be sworn by the courtroom deputy.

21         (Defendant sworn.)

22              THE COURT:  All right.  And then, Mary, we'll just

23   check for the marshals to be ordered -- the first one after any

24   processing.

25              COURTROOM DEPUTY:  Okay.

1          THE COURT:  So in just a minute, I'm going to have

2     you sign this document.  You will be signing it under oath and

3     acknowledging that you are the defendant in this case, that

4     you're aware of the conditions of release, that you promise to

5     obey all conditions of release, to appear as directed, and to

6     surrender for service of any sentence imposed, and that you're

7     aware of the penalties and sanctions as set forth above in the

8     document.

9          Do you agree to all of that?

10          THE DEFENDANT:  I do, Your Honor.

11          THE COURT:  All right.  Then I will tell you when you

12     can sign.  It's going to be just a minute.

13          And then what we'll do is we'll print off a copy for you

14     to take with you today.  You're going to need to go to Pretrial

15     immediately from here downstairs, and your lawyer can take you,

16     but you'll probably need a copy of that so they know what we

17     ordered for someone -- and then they'll give you instructions

18     from there.

19          COURTROOM DEPUTY:  Okay.

20          THE COURT:  All right.  You can go ahead and sign on

21     that signature pad.

22          Oh, perfect.  You're doing it.

23          All right.  Then again I'll order you released after any

24     processing.

25          Anything further from the government?

1          MS. PURDY-STEENHOLDT:  No, Your Honor.

2          THE COURT:  Anything further, Miss -- Mr. Eustice?

3          MR. EUSTICE:  No, Your Honor.

4          THE COURT:  And, again, congratulations.  You've been

5    doing really well.  Just keep doing what you're doing.  I mean,

6    obviously, I know you have a sentencing coming up, but that all

7    plays into that so just keep doing what you're doing, okay?

8        All right.  We're in recess.  Thank you, everybody.

9          MR. EUSTICE:  Thank you, Your Honor.

10          THE DEFENDANT:  Thank you, Your Honor.

11        (Recess taken at 12:24 p.m.)

12

13                        * * * * * * *

14

15      I, Rogene S. Schroder, certify that the foregoing is a

16    correct transcription to the best of my ability from the

17    digital recording of the proceedings held in the above-entitled

18    matter.

19        _/s/Rogene S. Schroder_              June 24, 2022
20              Transcriber                      Date

21

22

23

24

25